| | |
|---|---|
| LANNY MARKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00147-JRG-CRW |
| | ) |
| MITZIA WADDILL, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Plaintiff Lanny Markland, proceeding pro se, filed this 42 U.S.C. § 1983 action, alleging that officers used excessive force against him during his arrest for attempted murder. Captain Lincoln Orellana filed counterclaims for assault and battery. Now before the Court is a motion for summary judgment filed by Captain Lincoln Orellana, Sergeant David Johnson, Corporal Dennis James Deese, Corporal Franklin Peters, Officer Dustin Smith, and Officer Cody Mullins (collectively "Defendants" or "Elizabethton Defendants"). [Defs.' Mot., Doc. 138]. Plaintiff did not file a response and the time in which to do so has passed.[1]

As a preliminary matter, the Court notes that Plaintiff filed a "pretrial narrative statement," purporting to reinstate defendants that have been dismissed from the case and raising a new claim against Carter County. [Pl.'s Pretrial Narrative, Doc. 160]. Plaintiff has already amended his complaint on three occasions, and he provides no justification for further amendment at this late stage of proceedings. Accordingly, to the extent Plaintiff requests leave to amend his complaint,

---

[1] Mitzia Waddill and the Carter County Defendants—Justin Covington, Johnathan Blevins, Jeremiah Bartlett, Gabriel Felty and Tyler Holsclaw—also filed dispositive motions which are pending before the Court. [Waddill's Mot. Summ. J., Doc. 133; Carter Cnty. Defs.' Mot. Summ. J., Doc. 142; Carter Cnty. Defs.' Mot. Dismiss, Doc. 153]. However, Plaintiff has stipulated to the dismissal of these Defendants. [Stip. Dismiss Waddill, Doc. 157; Stip. Dismiss Carter Cnty. Defs., 167]. Accordingly, their dispositive motions will be denied as moot.

the request is denied. To be clear, Plaintiff's third amended complaint [Compl., Doc. 72] (hereafter "Complaint") is the operative complaint and the only Defendants remaining in this action are the Elizabethton Defendants, whose summary judgment motion is now before the Court.

As discussed below, Defendants' motion will be **GRANTED,** Defendant Orellana's counter claims will be **DISMISSED without prejudice** and this action will be **DISMISSED**.

I.     **FACTUAL ALLEGATIONS IN THE COMPLAINT**

In the complaint, Plaintiff alleges, under penalty of perjury, that during his arrest on August 18, 2022, officers held him at gun point and by the arms while Cody Mullins struck him in the face with a "closed hammer fist." [Compl. at 7]. This occurred while Plaintiff was on his knees, with his hands cuffed, "not resisting in any manner whatsoever." [*Id.*]. Mullins struck Plaintiff "over and over" until he was unconscious. [*Id.*]. During the beating, Mullins was standing over Plaintiff's back and the other officers had a clear view of what was happening. [*Id.*]. However, they did not intervene. [*Id.*]. Plaintiff's face was swollen for several months afterward and is still damaged because it did not heal properly. [*Id.* at 4].[2]

II.     **DEFENDANTS' SUMMARY JUDGMENT EVIDENCE**

In support of their motion for summary judgment, Defendants rely on officer testimony [Officer Decls., Doc. 138 Ex. 2–10]; Defendant Peters' body camera footage [Peters' Body Camera Video, Doc. 141]; records of Plaintiff's criminal convictions arising from the incident [Crim. Js., Doc. 138, Ex. 2 at 12–19]; and excerpts from the transcript of his trial for resisting arrest [Crim. Trial Tr., Doc. 138, Ex. 1].

A.     **Officers' Statements**

---

[2] The Complaint also contains allegations that Plaintiff received inadequate medical care. [Compl. at 7–8]. However, the Court does not include them here, since the defendants who played a role in Plaintiff's medical care—Mitzia Waddill and Carter County Defendant Tyler Holsclaw— have been dismissed from the case.

2

On August 18, 2022, Defendant Orellana was patrol captain for the Elizabethton Police Department and assigned to the police department's Special Response Team ("SRT"). [Orellana Decl., Doc. 138-2 ¶ 3]. Around midnight, he received a be-on-the-lookout ("BOLO") for a man—later identified as Plaintiff—who had shot and stabbed a woman and drove a black Honda with a plexiglass window. [*Id.* ¶ 5]. Orellana located Plaintiff's vehicle in the parking lot of an apartment building. [*Id.* ¶ 6]. A witness told Orellana and Defendant Johnson, who had arrived on scene, that Plaintiff was inside her third floor apartment. [*Id.* ¶ 7]. Orellana then set up a perimeter outside the apartment building with patrol units and summoned other SRT members to the scene. [*Id.* ¶ 8].

In addition to Orellana, the SRT members who responded were Defendants Mullins, Johnson, and Peters, as well as Officers Trevor Salyer, Jason Mosier, and Justin Pearce. [*Id.* ¶ 9]. Defendants Deese and Smith, who were not SRT members, helped to secure the perimeter. [Deese Decl., Doc. 138-6 ¶¶ 4, 10; Smith Decl., Doc. 138-7 ¶¶ 4, 10].

SRT began evacuating the apartment building as a safety precaution. [Orellana Decl. ¶ 10]. A hostage negotiator who arrived on scene gave verbal commands through a bullhorn for Plaintiff to come out. [*Id.* ¶ 11]. When Plaintiff did not respond, Orellana led SRT to the apartment where Plaintiff was located. [*Id.* ¶ 12]. SRT members opened the door of the apartment and gave commands for Plaintiff to come out and show his hands. [*Id.* ¶ 13]. After several minutes passed without a response, SRT released "clear out," which is a type of OC gas, into the apartment. [*Id.* ¶¶ 14, 15]. Officers issued additional verbal commands, without results. [*Id.* ¶ 15]. Then Orellana led SRT into the apartment and they proceeded to clear each room. [*Id.* ¶ 16].

Mullins and Salyer went to the back bedroom of the apartment and discovered Plaintiff, who was wedged underneath a mattress. [Mullins Decl., Doc. 138-5 ¶ 14; Salyer Decl., Doc.

3

138-8 ¶ 12]. Salyer lifted the mattress and covered Mullins with his weapon drawn, as Mullins attempted to gain control of Plaintiff's hands. [Mullins Decl. ¶ 14; Salyer Decl. ¶ 12]. Plaintiff resisted Mullins' efforts by keeping his hands under his body, thereby preventing Mullins from seeing if Plaintiff had a weapon. [Mullins Decl. ¶ 14; Salyer Decl. ¶ 12].

Orellana and Johnson entered the bedroom and Orellana attempted to grab Plaintiff's hand to cuff him. [Orellana Decl. ¶ 20]. Mullins watched as Plaintiff struck Orellana in the face, breaking the seal of Orellana's gas mask. [*Id.* ¶ 20; Mullins Decl. ¶ 17]. Orellana then struck Plaintiff before stepping to the side of the room due to complications from ingesting the OC gas. [Orellana Decl. ¶¶ 20–21]. Around the same time, Defendant Peters entered the bedroom. [Peters Decl., Doc. 138-4 ¶ 17]. Peters had been on patrol when he was called to the scene and did not have time to change into his SRT uniform. [*Id.* ¶ 5]. Hence, unlike the other SRT members, he was still wearing his patrol uniform and was equipped with a body camera. [*Id.* ¶ 7]. While officers were struggling to subdue Plaintiff, Peters' body camera inadvertently activated and began recording. [*Id.* ¶ 19].

Plaintiff continued to actively resist being arrested. [Mullins Decl. ¶ 17]. Mullins held Plaintiff with one hand and applied several hammer strikes to Plaintiff's head, using the fist of his other hand. [*Id.* ¶ 17]. Johnson was then able to grab Plaintiff's hands and place him in handcuffs. [Johnson Decl., Doc. 138-3 ¶ 21]. After Plaintiff was handcuffed, no additional force was used. [Mullins Decl. ¶ 19; Mosier Decl., Doc. 138-9 ¶ 19 ]. Mullins helped Plaintiff to his feet and he was escorted out of the apartment, walking under his own power. [Mullins Decl. ¶ 19; Mosier Decl. ¶ 19]. Carter County EMS evaluated Plaintiff and a Carter County Deputy transported him

4

to the jail.[3] [Orellana Decl. ¶¶ 24–25]. A handgun belonging to Plaintiff was subsequently discovered at the scene. [*Id.* ¶ 26].

### B. Body Camera Video

Peters' body camera video does not capture the entire incident but is consistent with the officers' statements cited above. The video begins with a view of several officers struggling with Plaintiff, who is lying on a box spring. [Peters' Body Camera Video at 3:10:00]. The officers are wearing gas masks, with the exception of Mullins. [*Id.*]. Mullins places one arm around Plaintiff's neck and lifting him up somewhat, strikes Plaintiff in the head with a closed fist, using a hammer-type motion. [*Id.* at 3:10:15–17]. Mullins then releases his hold around Plaintiff's neck and administers approximately four additional hammer strikes to Plaintiff's head. [*Id.* at 3:10:17–21]. Plaintiff, who is lying on his stomach, continues to struggle as officers hold down his head and attempt to gain control of his arms. [*Id.* at 3:10:22–51]. Mullins and another officer grab hold of Plaintiff's wrists and an officer says, "We got him." [*Id.* at 3:10:52]. A few moments later, Plaintiff, with his hands cuffed behind his back, walks out of the room under his own power, escorted by Mullins. [*Id.* at 3:11:27–3:11:38].

### C. State Court Criminal Records

Plaintiff was subsequently charged in the Circuit Court for Carter County, Tennessee, with attempted first degree murder; possession of a firearm during the commission of a dangerous felony; employing a firearm during the commission of a dangerous felony; and resisting arrest. [Crim. Js.]. He pled guilty to the attempted murder and firearm charges. [*Id.* at 12–17]. However, he contested the resisting arrest charge, which proceeded to a bench trial. [*Id.* at 18].

---

[3] Prior defendant Mitzia Waddill, who is a licensed practical nurse at Carter County Jail, assessed Plaintiff on the morning of the incident. [Waddill Decl., Doc. 133-1 ¶ 10]. Notably, she did not observe any sign of injury other than bruising over his eye and did not believe he needed to go to the hospital. [*Id.*].

At the criminal trial, the judge heard witness testimony from officers Orellana, Johnson, and Salyer, and viewed Peters' body camera video. [Crim. Trial Tr. at 2]. Plaintiff did not raise an affirmative defense of excessive force. [*See id.* at 11–21]. In closing, the prosecutor focused on Plaintiff's action of striking Orellana as the primary basis for the resisting charge:

> This case is not about Cody Mullins. This case is about Mr. Markland resisting arrest by striking Orellana in the face and dislodging his face mask while Captain Orellana, among other members of the SWAT team, were attempting to effect an arrest.

[*Id.* at 17–18]. In her summation, the judge observed that Plaintiff continued to struggle up to the point where he was restrained. [*Id.* at 22]. However, she, too, indicated that Plaintiff's interaction with Mullins was beyond the scope of the criminal trial:

> Again, just stopping at the point where Mr. Markland strikes Captain Orellana, what happens after that, that's for the federal court to decide, okay? I think at that point the civil aspects take over.

[*Id.*]. Plaintiff was ultimately found guilty of resisting arrest. [Crim. Js. at 18]. He did not appeal.

### III. LEGAL STANDARD

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex,* 477 U.S. at 322. Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A litigant's pro se status does not relieve him of his summary judgment burden to support his

factual assertions with admissible evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010).

When ruling on a summary judgment motion, the Court views the facts and the inferences drawn from the evidence of record in the light most favorable to the non-moving party. *Id.* at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A plaintiff's account is "blatantly contradicted by the record," for example, when the plaintiff's version of the facts is contradicted by video evidence. *Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014).

Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes] . . . a pure question of law." *Scott*, 550 U.S. at 381 n.8 (emphasis in original). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

**IV. DISCUSSION**

To demonstrate liability under § 1983 as to any defendant, a plaintiff must establish both that the defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See, e.g., Baker v. McCollan,* 443 U.S. 137, 140 (1979). Here, Plaintiff alleges that Mullins violated his Fourth Amendment right to be free from

7

Case 2:22-cv-00147-JRG-CRW   Document 171   Filed 08/25/25   Page 7 of 14
PageID #: 924

excessive force, and that the other Defendants participated in, or failed to prevent, Mullins' constitutional violation. [Compl. at 5, 7].

Moving for summary judgment, Defendants contend that Plaintiff's claims are procedurally barred under the *Heck* doctrine. [Defs.' Mem., Doc. 140 at 11]. They also assert that they are entitled to qualified immunity.[4] [*Id.*]. Plaintiff did not file a response opposing summary judgment. Nevertheless, the Court must carefully review Defendants' motion to determine whether there is a material dispute of fact and whether Defendants are entitled to judgment as a matter of law. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."). Because Defendants share common grounds for relief, the Court will address its analysis to Defendants as a group, rather than discussing them separately.

## A. Blatantly Contradicted Facts

First, the Court notes that several key facts in Plaintiff's version of events are blatantly contradicted by the body camera video. According to Plaintiff, Mullins beat him when he was already handcuffed and "not resisting in any manner whatsoever." [Compl. at 7]. However, video shows that Plaintiff was still struggling with officers when Mullins implemented the hammer strikes, and Plaintiff was not restrained until approximately 3:10:52 on the video, when an officer can be heard stating "We got him." Further, video shows that no force was used against Plaintiff after handcuffs were applied. Plaintiff also maintains that Mullins struck him until he was "knock[ed] unconscious." [*Id.*]. But video shows that Plaintiff continued to struggle after Mullins

---

[4] Defendants also argue that Mullins and Peters are entitled to dismissal based on the expiration of the applicable statute of limitations. [Defs.' Mem. at 11]. However, the Court need not address that argument, since, as discussed below, Defendants' qualified immunity argument is dispositive as to all Defendants.

8

employed the hammer strikes and Plaintiff walked out of the room without assistance approximately a minute after Mullins' use of force.

The Court must view the facts in the light most favorable to Plaintiff "*to the extent supportable by the record.*" *Scott*, 550 U.S. at 381 n.8 (emphasis in original). But "where, as here, there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape." *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (citing *Scott*, 550 U.S. at 378–81) (cleaned up). Based on the body camera footage, the Court finds that Plaintiff was still resisting when Mullins implemented the hammer strikes; Plaintiff was not beaten unconscious by Mullins' use of force; and after Plaintiff was placed in handcuffs, no additional force was used.

### B. *Heck v. Humphrey*

Next, the Court turns to Defendants' argument that Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under the *Heck* doctrine, a plaintiff cannot obtain damages in a § 1983 action where a judgment in the plaintiff's favor would "necessarily imply the invalidity" of his otherwise valid conviction. *Id.* at 487. *Heck* may bar an excessive force claim in two situations: (1) when lack of excessive force is an element of the crime or (2) when excessive force is an affirmative defense to the crime. *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (internal citations omitted). In either case, the § 1983 claim and the criminal conviction must arise out of the same events. *Matheney v. City of Cookeville*, 461 F. App'x 427, 431 (6th Cir. 2012) (citing *Cummings v. City of Akron*, 418 F.3d 676, 682–83 (6th Cir. 2005)).

Here, Defendants contend that if Plaintiff is successful in this action, the judgment will imply that his state conviction for resisting arrest is invalid. [Defs.' Mem. at 14]. As Defendants point out, excessive force is an affirmative defense to resisting arrest under Tennessee law. *See*

9

*Roberts v. Anderson*, 213 F. App'x 420, 427 (6th Cir. 2007) ("[U]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, . . . conviction of such a charge necessarily includes a finding that the officer did not use excessive force.") (citing Tenn. Code Ann. § 39-16-602). And Plaintiff was resisting arrest when Mullins employed the hammer strikes. Hence, at first glance, Plaintiff's conviction for resisting arrest would seem to include a finding that officers did not use excessive force.

However, excerpts from the trial transcript make the issue less clear cut. The prosecutor indicated in closing that Plaintiff's guilt was specifically based on his act of striking Orellana, and that Plaintiff's interaction with Mullins was not at issue. In finding Plaintiff guilty of resisting arrest, the judge also declined to consider Plaintiff's interaction with Mullins, observing that what happened after Plaintiff struck Orellana was "for the federal court to decide." [Crim. Trial Tr. at 22]. If Plaintiff's conviction was based on his striking Orellana—which occurred *before* Mullins' hammer strikes—an allegation of excessive force against Mullins would not have provided Plaintiff with an affirmative defense to the resisting charge.

Because Plaintiff's allegation of excessive force is not necessarily incompatible with his conviction for resisting arrest, the Court will assume, for the purposes of this analysis, that the *Heck* doctrine does not apply.

### C. Qualified Immunity

The Court agrees with Defendants that they are entitled to qualified immunity. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is not clearly established unless "at the time of the officer's conduct, the law was sufficiently clear such that

every reasonable official would understand what he is doing is unlawful.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986)). Once the qualified immunity defense is raised, the plaintiff bears the burden of overcoming the defense. *See Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

Courts employ a two-step analysis when assessing whether an official is entitled to qualified immunity: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### 1. Constitutional Violation

Considering Plaintiff's allegations in the light most favorable to him, he has not established that Defendants violated his right to be free from excessive force.

Excessive force claims are analyzed under the Fourth Amendment, which protects citizens from unreasonable seizures by law enforcement. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). It is well established that officers may use some amount of physical coercion or threat to effect an arrest. *Id.* at 396. The question in the excessive force context is whether the officer's use of force is objectively reasonable, judged from the perspective of a reasonable officer on the scene without the benefit of hindsight. *Id*. The reasonableness of an officer's use of force depends on the particular facts and circumstances of the case, including (1)" the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

11

Here, the crime at issue was severe. Officers suspected that Plaintiff had just attempted to murder his girlfriend by shooting and stabbing her. Moreover, Plaintiff presented an imminent threat of serious harm. Officers knew that Plaintiff had recently been armed with a gun and knife, and it was unclear whether he was still in possession of one or both of these weapons. Finally, at the time Mullins struck Plaintiff, Plaintiff was resisting arrest. He had refused multiple times to comply with officers' instructions to surrender; struck Orellana, dislodging his gas mask; and was flailing about, attempting to avoid being handcuffed. Given the foregoing, it was objectively reasonable for Mullins to use hammer strikes to gain Plaintiff's compliance. And Plaintiff's excessive force claim against Mullins fails.

Plaintiff's claims against the other five Defendants are based on his allegation of excessive force against Mullins. Although an officer may be liable for participating in or failing to intervene to stop the use of excessive force, *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997), Plaintiff has not established that excessive force was used. Accordingly, there is no basis to hold Defendants Orellana, Johnson, Deese, Peters, and Smith liable under § 1983.

### 2. Clearly Established Right

Even if Defendants violated Plaintiff's Fourth Amendment rights, they are entitled to summary judgment on qualified immunity grounds. To refute Defendants' qualified immunity defense, Plaintiff bore the burden of demonstrating that the claimed right was clearly established. *Ciminillo*, 434 F.3d at 466; *see also Mosier v. Evans*, 90 F.4th 541, 548 (6th Cir. 2024) (finding that the defendant was entitled to qualified immunity because the plaintiff's briefing made no attempt to show that the defendant violated his clearly established rights). However, Plaintiff has not identified any authority establishing that Mullins' use of force was clearly unlawful under circumstances similar to those at issue here—i.e., where a violent suspect, who is likely armed,

ignores multiple requests by law enforcement to surrender, and actively resists arrest. The Court is not aware of such a case.

On the contrary, courts have found that an officer's use of hammer strikes was objectively reasonable to subdue a suspect actively resisting arrest. *See Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. 2019) (finding that officer's use of hammer strikes on plaintiff's back and face while he lay on the ground did not violate the Fourth Amendment, where plaintiff was being arrested for a fatal stabbing, repeatedly refused to comply with officer commands, and had his hands beneath his body, preventing the officer from handcuffing him); *see also Williams v. Hall*, No. 3:21-CV-556-RLM-MGG, at *7 (N.D. Ind. Sep. 9, 2021) (finding no Fourth Amendment violation where officer placed plaintiff, who was actively resisting arrest, in modified side headlock and delivered three hammer strikes to his forehead, stopping his resistance long enough to handcuff him); *Parkins v. Nguyen*, No. 5:17-CV-05220, at *15 (W.D. Ark. Oct. 12, 2018) (dismissing excessive force claim against officer who applied two hammer strikes to the side of plaintiff's head in order to gain compliance, when plaintiff curled his hand under him, resisting being placed in handcuffs).

Because it was not clearly established that Mullins' use of force violated Plaintiff's constitutional rights, Mullins and the other Defendants, who Plaintiff claims facilitated or failed to stop Mullins' use of excessive force, are entitled to qualified immunity.

## V. CONCLUSION

For the reasons discussed above, the Elizabethton Defendants' motion for summary judgment [Doc. 138] is **GRANTED** and the Complaint [Doc. 72] is **DISMISSED with prejudice.** All pending motions [Docs. 133, 142, 153, 155] are **DENIED as moot**.

Since the Court grants summary judgment to Defendants on Plaintiff's federal claims, the Court, in its discretion, will decline to exercise supplemental jurisdiction over Defendant Orellana's state law counter claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). Accordingly, Defendant Orellana's counter claims for assault and battery are **DISMISSED without prejudice**.

The Court **CERTIFIES** that an appeal from this case would not be taken in good faith and would be frivolous. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A). Any application by Plaintiff to proceed in forma pauperis on appeal is therefore preemptively **DENIED**. An appropriate judgment order will enter.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
